IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| GLOBAL ETICKET EXCHANGE LTD., )<br><br>Plaintiff, )<br><br>v. )<br><br>TICKETMASTER L.L.C., AND )<br>LIVE NATION WORLDWIDE, INC., )<br><br>Defendants. ) | Civil Action No. 6:21-cv-00399<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Global eTicket Exchange Ltd. ("GEE" or "Plaintiff"), for its Complaint against Defendants, Ticketmaster L.L.C. and Live Nation Worldwide, Inc. (collectively "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including, but not limited to, 35 U.S.C. § 271.

### THE PARTIES

2.      Plaintiff GEE is a corporation organized and exiting under the laws of the State of Delaware, with its principal place of business at 3000 Village Run Road, Unit 103, #218, Wexford, Pennsylvania 15090.

3.      On information and belief, Defendant Live Nation Worldwide, Inc. ("Live Nation") is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 9348 Civic Center Drive, Beverly Hills, California 90210.

4. On information and belief, Defendant Live Nation is registered to transact business in the State of Texas under Texas Taxpayer Number 11339778802.

5. On information and belief, Defendant Live Nation can be served with process through its registered agent for service in Texas:  Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas 77056.

6. On information and belief, Defendant Ticketmaster L.L.C. ("Ticketmaster") is a limited liability company organized and existing under the laws of the State of Virginia, having a place of business at 7060 Hollywood Boulevard, Hollywood, California 90028.

7. On information and belief, Defendant Ticketmaster is registered to transact business in the State of Texas under Texas Taxpayer Number 19547136440.

8. On information and belief, Defendant Ticketmaster can be served with process through its registered agent for service in Texas:  Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas 77056.

9. On information and belief, Defendant Live Nation and Defendant Ticketmaster are wholly-owned subsidiaries of Live Nation Entertainment, Inc., which is a corporation organized and existing under the laws of the state of Delaware, having a place of business at 9348 Civic Center Drive, Beverly Hills, California 90210.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (any Act of Congress relating to patents) because this action arises under the patent laws of the United States, 35 U.S.C. §§1 *et seq*.

11. This Court has personal jurisdiction over Ticketmaster because Ticketmaster has committed and continues to commit acts of infringement in this judicial district in violation of at least 35 U.S.C. § 271(a).

12.     This Court also has personal jurisdiction over Ticketmaster because Ticketmaster has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas and this judicial district.   In particular, this Court has personal jurisdiction over Ticketmaster because, *inter alia*, Ticketmaster, on information and belief:  (1) has substantial, continuous, and systematic business contacts with the State and this judicial district; (2) enjoys substantial income from its operations in this State and this judicial district; and (3) solicits business and makes, uses, offers for sale, and/or sells infringing products and services in this State and this judicial district.

13.     Ticketmaster has purposefully availed itself to the privileges of conducting business within this judicial district, has established sufficient minimum contacts with the judicial district such that it reasonably should know and expect that it could be haled into court in this judicial district, has purposefully directed activities at residents of this judicial district, and at least a portion of the patent infringement claims alleged in this Complaint arise out of or are related to one or more of the foregoing activities.

14.     Ticketmaster has purposefully directed activities at residents of this judicial district, including the implementation and use of its integrated primary and secondary market verified electronic ticket sales and venue access control systems embodying and practicing the patented inventions, thereby committing and continuing to commit acts of patent infringement alleged herein.  On information and belief, Ticketmaster regularly conducts and solicits business in this judicial district, including through contracts for the implementation and use of its integrated primary and secondary market verified electronic ticket sales and venue access control systems with the owners of at least the following event venues located in this judicial district: (1) Austin City Limits Live at the Moody Theater, 310 W. Willie Nelson Blvd., Austin, Texas 78701; (2)

3TEN Austin City Limits Live, 310 W. Willie Nelson Blvd., Suite 1A, Austin, Texas 78701; (3) Germania Insurance Amphitheater, 9201 Circuit of the Americas Blvd., Del Valle, Texas 78617; (4) Bold Stadium, 9201 Circuit of the Americas Blvd., Del Valle, Texas 78617; (5) H-E-B Center at Cedar Park, 2100 Avenue of the Stars, Cedar Park, Texas 78613; (6) Austin Country Club, 4408 Long Champ Dr., Austin, Texas 78746; (7) McLane Stadium, 1001 S. M.L.K. Jr. Blvd., Waco, Texas 76704; (8) AT&T Center, 1 AT&T Center Parkway, San Antonio, Texas 78219; (9) Alamodome Stadium, 100 Montana Street, San Antonio, Texas 78203; (10) Aztec Theatre, 104 N. St. Mary's Street, San Antonio, Texas 78205; (11) Jo Long Theatre, 226 N. Hackberry, San Antonio, Texas 78202; (12) Little Carver Theater, 226 N. Hackberry, San Antonio, Texas 78202; (13) Majestic Theatre, 224 E. Houston Street, San Antonio, Texas 78205; (14) Charline McCombs Empire Theatre, 226 N. St. Mary's Street, San Antonio, Texas 78205; TPC San Antonio, 23808 Resort Parkway, San Antonio, Texas 78261; (15) Whitewater Amphitheater, 11860 FM306 Suite 1, New Braunfels, Texas 78132; (16) Abraham Chavez Theatre, 1 Civic Center Plaza, El Paso, Texas 79901; (17) Don Haskins Center, 151 Glory Road, El Paso, Texas 79902; (18) The Plaza Theatre Performing Arts Center, 125 W. Mills Avenue, El Paso, Texas79901; and (19) El Paso County Coliseum, 4100 E. Paisano Drive, El Paso, Texas 79905.  Ticketmaster has derived and continues to derive substantial revenues from its implementation, use, offer for sale and sale of the infringing integrated primary and secondary market verified electronic ticket sales and venue access control systems in this judicial district.

15.    Venue is proper in this judicial district for Ticketmaster under 28 U.S.C. § 1400(b) because, among other reasons, Ticketmaster is registered to do business in the State of Texas, has committed acts of infringement in this judicial district, and has a regular and established place of business within this judicial district.

16.     On information and belief, Ticketmaster has a significant physical presence in this judicial district from which it engages in regular and established business.   Specifically, on information and belief, Ticketmaster contracts with owners of the event venues in this judicial district (listed above in paragraph 14) to install and maintain equipment owned by Ticketmaster at the event venue box offices.   On information and belief, the Ticketmaster equipment includes printers, routers, access points, network switches, and credit card swipers installed and maintained at the event venues, as well as event entry scanning and access control devices.   On information and belief, Ticketmaster exerts control over the equipment and the space occupied by the equipment pursuant to the following terms, conditions, obligations, and responsibilities specified in the contracts with the event venue owners.

    a.     On information and belief, Ticketmaster maintains sole and exclusive ownership of the equipment at all times.

    b.     On information and belief, the event venue owner has no right, title or interest in the equipment and may only use the equipment as permitted by Ticketmaster pursuant to the terms of the contract.

    c.     On information and belief, Ticketmaster prohibits the event venue owner from moving the equipment or permitting the equipment to be moved without Ticketmaster's prior written permission.

    d.     On information and belief, Ticketmaster prohibits the event venue owner and its employees from altering, modifying, copying, or adding to the equipment without Ticketmaster's prior written permission.

e.     On information and belief, Ticketmaster pays the costs for installing the equipment at the event venue box office, as well as the monthly communication network connection costs for the equipment.

f.     On information and belief, Ticketmaster is responsible for removing the equipment from the event venue upon termination of the contract between Ticketmaster and the event venue owner.

17.     On information and belief, Ticketmaster has agents and/or employees who maintain a significant presence in this judicial district. On information and belief, Ticketmaster employees and/or agents install the equipment at the event venue box offices, and provide ordinary and routine maintenance, repair, and support of the equipment in the space occupied at the event venue box offices. On information and belief, the event venue box office staff act as Ticketmaster's agents in performing in-person ticket distribution (referred to as "will-call method of fulfillment") to Ticketmaster customers who purchased tickets on Ticketmaster's online integrated primary and secondary market ticket sales platform. On information and belief, Ticketmaster provides training and/or instructions to the event venue box office staff for performing the will-call method of fulfillment service for Ticketmaster customers. On information and belief, pursuant to the training and instructions provided by Ticketmaster, the event venue box office staff operate the Ticketmaster-owned equipment installed at the event venue box office to communicate with Ticketmaster's network system in performing the will-call method of fulfillment service.

18.     On information and belief, Ticketmaster conducts regular business at event venue box offices in this judicial district. On information and belief, the Ticketmaster enters into contracts with event venue owners having multiple year renewable terms and each such event venue hosts several events each year of the contract. Ticketmaster advertises the will-call method

of fulfillment service as one of the standard ticket distribution methods for Ticketmaster customers.

**ticketmaster** | Home | Ticketmaster.com | Concerts | Sports | Arts and T

TICKET DELIVERY

### Where do I pick up will call tickets?

Article

Where do I pick up will call tickets?

The will call window is usually near the venue's main entrance - and will call tickets are typically available an hour before the event.

You'll need the following to claim your tickets!

- You photo ID
- You Ticketmaster order number
- The credit card you used to buy the tickets

If you prefer to pick up your tickets before the day of the event, please contact the venue for box office rules and hours.

*See*, https://help.ticketmaster.com/s/article/Where-do-I-pick-up-will-call-tickets?

**ticketmaster** | Home | Ticketmaster.com | Concerts | Sports | Arts and Theatre

TICKET DELIVERY

### I haven't received my tickets in the mail yet. What do I do?

Article

I haven't received my tickets in the mail yet. What do I do?

Our goal is to have your tickets in your mailbox within two weeks of purchase. A shipping confirmation email is sent when your tickets are printed and shipped.

Some events may have a **delivery delay** in place, as such your tickets will not be shipped or available to print prior to that date.

If it's two days before the event and you're still waiting for your tickets, Click Here to contact Fan Support. We'll make sure you can pick them up at the venue's will call window (no extra charge). If your tickets arrive in the mail in the meantime, tear them up! Once we make other delivery arrangements, we cancel the original barcodes.

*See*, https://help.ticketmaster.com/s/article/I-haven-t-received-my-tickets-in-the-mail-yet-What-do-I-do?  Ticketmaster also advertises and provides Ticketmaster customers with ticketing services

at the event venue box offices if Ticketmaster customers encounter technical difficulties with tickets purchased on the infringing integrated primary and secondary market ticket sales platform.



*See*, https://help.ticketmaster.com/s/article/MobileEntry?

19.     The will-call method of fulfillment and ticketing assistance services provided to Ticketmaster customers at the event venue box office are integral to Ticketmaster's primary business.  Ticketmaster's infringement of GEE's patents, as described in more detail below, is substantially related to Ticketmaster's regular and established places of business in this judicial district because the tickets subject to the box office ticketing services are purchased by Ticketmaster customers via the www.ticketmaster.com, www.livenation.com, www.ticketsnow.com, www.ticketexchangebyticketmaster.com, and www.tradedesk.ticketmaster.com websites on the infringing Ticketmaster integrated primary and secondary market ticket sales platform, tokens establishing the validity and authenticity of the tickets are stored on the infringing Ticketmaster network system database, and the box office

ticketing services involve the use of the Ticketmaster-owned equipment at the event venue box office to communicate with the infringing Ticketmaster network system database.

20.     This Court has personal jurisdiction over Live Nation because Live Nation has committed and continues to commit acts of infringement in this judicial district in violation of at least 35 U.S.C. § 271(a).

21.     This Court also has personal jurisdiction over Live Nation because Live Nation has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas and this judicial district.  In particular, this Court has personal jurisdiction over Live Nation because, *inter alia*, Live Nation, on information and belief:  (1) has substantial, continuous, and systematic business contacts with the State and this judicial district; (2) owns, manages and/or operates facilities in this State and this judicial district; (3) enjoys substantial income from its operations in this State and this judicial district; (4) employs Texas residents in this State and this judicial district; and (5) solicits business and makes, uses, offers for sale, and/or sells infringing products and services in this State and this judicial district.

22.     Live Nation has purposefully availed itself to the privileges of conducting business within this judicial district, has established sufficient minimum contacts with the judicial district such that it reasonably should know and expect that it could be haled into court in this judicial district, has purposefully directed activities at residents of this judicial district, and at least a portion of the patent infringement claims alleged in this Complaint arise out of or are related to one or more of the foregoing activities.

23.     Live Nation has purposefully directed activities at residents of this judicial district, including the implementation and use of its integrated primary and secondary market verified electronic ticket sales and venue access control systems embodying and practicing the patented

inventions, thereby committing and continuing to commit acts of patent infringement alleged herein.   On information and belief, Live Nation regularly conducts and solicits business in this judicial district, including through the implementation and use of its integrated primary and secondary market verified electronic ticket sales and venue access control systems at the Aztec Theatre at 104 N. St. Mary's Street, San Antonio, Texas 78205.  Live Nation has derived and continues to derive substantial revenues from its acts of patent infringement committed in this judicial district.

24.    Venue is proper in this judicial district for Live Nation under 28 U.S.C. § 1400(b) because, among other reasons, Live Nation is registered to do business in the State of Texas, has committed acts of infringement in this judicial district, and has a regular and established place of business within this judicial district.

25.    On information and belief, Live Nation maintains a significant physical presence in this judicial district.  On information and belief, Live Nation has a regular and established place of business in this judicial district at the Aztec Theatre, 104 N. St. Mary's Street, San Antonio, Texas 78205.  In addition, on information and belief, Live Nation employs a number of persons in this judicial district and derives and has derived substantial revenue from goods and services provided to persons or entities in this judicial district and from infringing acts occurring within this judicial district.

## THE GEE PATENTS-IN-SUIT

26.    On September 30, 2014, the United States Patent and Trademark Office duly and legally issued United States Patent No. 8,849,720 ("the '720 Patent"), entitled "Entertainment Event Ticket Purchase And Exchange System" after full and fair examination.  A true and correct copy of the '720 Patent is attached hereto as Exhibit A.

27.     Until its recent expiration, the '720 Patent has been in full force and effect since its issuance. GEE is the assignee and lawful owner of all right, title, and interest in and to the '720 Patent, including the right to sue for and recovery of damages for past infringements thereof.

28.     On February 26, 2019, the United States Patent and Trademark Office duly and legally issued United States Patent No. 10,217,065 ("the '065 Patent"), entitled "Entertainment Event Ticket Purchase And Exchange System" after full and fair examination. A true and correct copy of the '065 Patent is attached hereto as Exhibit B.

29.     The '065 Patent has been and remains in full force and effect since its issuance. GEE is the assignee and lawful owner of all right, title, and interest in and to the '065 Patent, including the right to sue for and recovery of damages for past, present, and future infringements thereof.

30.     The technology of the '720 Patent and the '065 Patent (collectively "Patents-in-Suit") is directed to specific network architecture and protocols which provide improvements to the technical functioning of electronic ticket exchange and venue access control networks by eliminating ticket and payment security vulnerabilities and fraud risks, and preventing venue access fraud.

31.     The claims of the Patents-in-Suit are directed to systems and methods which implement specific network architecture and protocols comprising: (1) a database structure employing a token representing an electronic ticket and associated with identifying information about a patron for establishing valid and authentic electronic ticket rights, as well as a patron's authentic electronic ticket ownership rights; (2) an integrated primary and secondary electronic ticket sales and payment platform implemented with the database structure for verified electronic ticket transactions by and between patrons; and (3) venue access control facilitated by the database

structure for verifying and authorizing valid and authentic electronic ticket rights for patrons having authentic electronic ticket ownership rights.

32.    The claimed inventions of the Patents-in-Suit provide enhanced security and fraud prevention by implementing network architecture and protocols that restrict primary market electronic ticket sales to valid and authentic electronic ticket rights purchased by patrons having identifying information stored on a database structure.  This technological improvement provides enhanced security and fraud prevention by precluding the sale of invalid, unauthentic, and/or counterfeit electronic ticket rights or the purchase of valid and authentic electronic ticket rights by anonymous individuals whose trustworthiness is uncertain and who may attempt to fraudulently resell valid and authentic electronic ticket rights on the secondary market.

33.    The claimed inventions of the Patents-in-Suit also provide enhanced security and fraud prevention by implementing network architecture and protocols comprising a database structure for primary and secondary market electronic ticket sales which stores a token representing an electronic ticket and associated with identifying information about a patron to establish a real-time record of valid and authentic electronic ticket rights and authentic electronic ticket ownership rights and restrict secondary market electronic ticket sales to valid and authentic electronic ticket rights between patrons having identifying information stored on the database structure.  This technological improvement provides enhanced security and fraud prevention by precluding the resale of valid and authentic electronic ticket rights by individuals who do not have authentic electronic ownership rights and the resale of invalid, unauthentic, and/or counterfeit electronic ticket rights.

34.    The claimed inventions of the Patents-in-Suit also provide enhanced security and fraud prevention for secondary market electronic ticket sales by implementing network

12

architecture and protocols for affecting the verified exchange of electronic ticket rights by transferring the patron identifying information associated with a token stored on the database structure to establish authentic electronic ticket ownership rights. This technological improvement provides enhanced security and fraud prevention by remotely brokering the exchange of verified valid and authentic electronic ticket rights between patrons on the database structure.

35. The claimed inventions of the Patents-in-Suit also provide enhanced security and fraud prevention for primary and secondary market electronic ticket sale payment transactions by implementing network architecture and protocols that restrict the purchase and resale of valid and authentic electronic ticket rights to patrons having payment information on the database structure. This technological improvement provides enhanced security and fraud prevention by facilitating the payment transaction without the disclosure of the purchaser's sensitive financial information to the seller and vice versa.

36. The claimed inventions of the Patents-in-Suit also provide enhanced security and fraud prevention for venue access by implementing network architecture and protocols that provide access to patrons presenting verified patron identifying information associated with the authentic electronic ticket ownership rights of a stored token representing valid and authentic electronic ticket rights. This technological improvement provides enhanced security and fraud prevention by restricting venue access to patrons presenting valid and authentic electronic ticket rights and enabling the identification of individuals who attempt to gain venue access with invalid, unauthentic and/or counterfeit electronic ticket rights.

37. The claimed inventions of the Patents-in-Suit also provide enhanced security and fraud prevention for venue and venue-related facility access by implementing network architecture and protocols comprising multiple access points for separately providing access to patrons

13

presenting verified patron identifying information associated with the authentic electronic ticket ownership rights of a stored token representing valid and authentic electronic ticket rights.  This technological improvement provides enhanced security and fraud prevention by restricting venue and venue-related facility access to patrons having authentic electronic ticket ownership rights of valid and authentic electronic ticket rights and enabling the identification of individuals who attempt to gain venue and/or venue-related facility access with invalid, unauthentic and/or counterfeit electronic ticket rights.

38.    The technology of the Patents-in-Suit was invented by Messrs. Tod A. Nestor, Robert Patrick, and Benito Cianciaruso, who also founded GEE.

39.     Each of the Patents-in-Suit is valid and enforceable.

40.    The '720 Patent has been cited in several United States patent applications filed by Ticketmaster, including applications which granted as U.S. Patent No. 10,878,118, U.S. Patent No. 10,402,580, U.S. Patent No. 10,102,393, U.S. Patent No. 9,978,023, U.S. Patent No. 9,959,528, U.S. Patent No. 9,740,988, U.S. Patent No. 9,686,241, U.S. Patent No. 9,477,820, and U.S. Patent No. 9,251,518.

## TICKETMASTER AND LIVE NATION'S INFRINGEMENT

41.    GEE repeats, re-alleges, and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

42.    On information and belief, Ticketmaster and Live Nation make, use, offer to sell, and/or sell in this judicial district and elsewhere in the United States, methods, services and systems in accordance with the Patents-in-Suit, including, but not limited to, the TM+ integrated primary and secondary market electronic ticket sales and venue access control system accessible through the www.ticketmaster.com, www.livenation.com, www.ticketsnow.com,

www.ticketexchangebyticketmaster.com, and www.tradedesk.ticketmaster.com websites and mobile apps ("TM+ System"), or the TM+ System implemented with the Presence venue access control platform (collectively, "Accused Systems").

43.     On information and belief, the Accused Systems facilitate:  (1) the primary market sale of valid and authentic electronic ticket rights to events at venues; (2) the resale of such valid and authentic electronic ticket rights on the secondary market; and (3) event venue access control by providing venue access to individuals having valid and authentic electronic ticket rights and preventing venue access to individuals having invalid and/or unauthentic electronic ticket rights.

44.      Ticketmaster actively promotes the sale of "verified" electronic ticket on its integrated primary and secondary market ticket sales platform of the Accused Systems to distinguish over its competitors.

> Selling Your Tickets
>
> When you end up with tickets you can't use, you should be able to resell your tickets to someone who can.  We've tried to make this as easy as possible with features that allow you to list your tickets straight from your Ticketmaster Account page.
>
> Although we may not be the largest resale marketplace, we strive to be the best and most transparent for fans purchasing resale tickets. Unlike other resale marketplaces, we verify every standard, Platinum and VIP ticket we sell, so that buyers know they are buying the real thing.  And for resale tickets where the original ticket was sold through another ticketing company, and then posted on Ticketmaster, we provide a money-back guarantee.  Additionally, when someone purchases tickets originally bought from Ticketmaster, they are re-issued in that buyer's name, giving them peace of mind that their tickets are both real and belong to them.

*See*, https://www.ticketmaster.com/ticketing101.  (emphasis added).

45.     On    information    a    belief,    Ticketmaster    owns    and    operates    the www.ticketmaster.com,        www.livenation.com,        www.ticketexchangebyticketmaster.com, www.ticketsnow.com, and www.tradedesk.ticketmaster.com websites and associated mobile apps.

> "Ticketmaster provides ticket sales, ticket resale services and marketing and distribution globally through www.ticketmaster.com and www.livenation.com and our other websites, mobile apps, numerous retail outlets and call centers, selling over 485 million tickets through our systems in 2019."

*See*, Live Nation Entertainment, Inc. 2021 10-K, at p. 5.

46.    On information and belief, the www.ticketmaster.com website and the www.livenation.com website each function as a customer interface for access to the same ticketing system and ticket inventory.

47.    On information and belief, the Purchase Policy posted on each of the www.ticketmaster.com website and the www.livenation.com website state that Ticketmaster facilitates third party resale transactions, charges service fees, and reserves the right to change the service fees.

> "Ticketmaster facilities third party ticket resale transactions through Fan-to-Fan, but does not set the ticket prices or determine seating locations of those resale tickets sold through Fan-to-Fan.  Please be aware that resale tickets are often posted for sale via Fan-to-Fan at prices that are higher than their original prices.  Ticketmaster may charge fulfillment, shipping, service or other fees for using our services.  Ticketmaster may change such fees at any time, including after you post your tickets."

*See*,  https://help.livenation.com/s/article/Purchase-Policy?  and  https://help.ticketmaster.com/s/article/Purchase-Policy?  (underlining in original).

48.    On information and belief, the Live Nation and Ticketmaster websites are operated on the same network server by the same Internet content delivery network, Fastly, Inc.

49.    The www.ticketmaster.com website and the www.livenation.com website are intricately configured to cross-market entertainment events and re-direct customers between the websites for facilitating electronic ticket sale transactions.  For example, on information and belief, the www.ticketmaster.com website is configured to re-direct customers seeking to purchase

electronic tickets for events hosted at a venue owned, rented, leased and/or operated by Live Nation to the www.livenation.com website. Similarly, on information and belief, the www.livenation.com website is configured to re-direct customers seeking to purchase electronic tickets for events hosted at venues owned by clients that have contracted with Ticketmaster for the implementation and use of the Accused Systems.

50.    On information and belief, the www.ticketmaster.com website and the www.livenation.com website are linked to the same customer account database network. On information and belief, a single customer account serves as both an individual's Ticketmaster customer account and Live Nation customer account ("Ticketmaster/Live Nation customer account"). After an individual registers a Ticketmaster customer account on the Ticketmaster website, the individual may use the same email address and password to Sign In and access the Live Nation customer account from the Live Nation website, and vice versa. The Live Nation website Sign In page states that it is "Powered by ticketmaster."



*See*, https://auth.ticketmaster.com/as/authorization. An individual's Ticketmaster/Live Nation customer account includes a collective listing of all electronic tickets purchased via the www.ticketmaster.com website and/or the www.livenation.com website.

51.     On information and belief, an individual may access either the Ticketmaster customer account or the Live Nation customer account to edit the account information or manage all electronic tickets purchased via the www.ticketmaster.com website and/or the www.livenation.com website.

52.     On information and belief, the Live Nation and Ticketmaster customer mobile apps are each subject to the control of Ticketmaster and Ticketmaster employees.  For example, the Live Nation customer mobile app "suspicious account activity" email notifications are issued by Ticketmaster from customer_support@email.ticketmaster.com.  In addition, on information and belief, the Live Nation customer mobile app settings are managed on the www.ticketmaster.com website.  To access the Live Nation customer mobile app account settings, customers are directed to Sign In to the secure my.ticketmaster.com Ticketmaster site.



53.     On information and belief, Live Nation Entertainment, Inc. is the owner by assignment of Ticketmaster intellectual property assets, including Ticketmaster trademarks or

patented inventions by Ticketmaster employees associated or used in connection with the infringing integrated  primary and secondary market verified electronic ticket and venue access control system.

54.    On information and belief, the www.ticketmaster.com website and the www.livenation.com website are subject to the Live Nation Entertainment, Inc. Privacy Policy, which is governed by Live Nation Entertainment, Inc. employees.



*See*, https://help.ticketmaster.com/s/article/Live-Nation-Privacy-Policy-Your-Privacy-Rights. For example, the Live Nation Entertainment, Inc. Privacy Policy governing the www.ticketmaster.com website specifies that the "friend" of an individual having a Ticketmaster customer account may contact privacy@livenation.com to request Live Nation Entertainment, Inc. to delete their information.



The Live Nation Entertainment, Inc. Privacy Policy governing the www.ticketmaster.com website also specifies that any questions about the Privacy Policy or other privacy concerns should be sent

Live Nation either by email to privacy@livenation.com or by letter to Live Nation Entertainment, Inc.'s Privacy Officer, Legal.

**Contact Us**

Feel free to contact us if you have more questions.

If you have any questions about this Policy or other privacy concerns, you can email us at privacy@livenation.com. Please do not include your credit card number or other sensitive information in your email. You can also write us at:

Live Nation Entertainment, Inc.
9348 Civic Center Drive
Beverly Hills, CA 90210
Attention: Privacy Officer, Legal

55.    On information and belief, the Terms of Use governing each of the www.ticketmaster.com website and the www.livenation.com website states that it is applicable to "www.livenation.com, www.ticketmaster.com, www.ticketsnow.com, and www.ticketexchangebyticketmaster.com."

| ticketmaster | Home | Ticketmaster.com | Concerts | Sports | Arts and Theatre |
| --- | --- | --- | --- | --- | --- |

POLICY & SECURITY

**Terms of Use**

Article

---

Terms of Use

Last Updated: June 25, 2019

Welcome! The following are the terms of use ("Terms") that govern your use of Live Nation and Ticketmaster's sites and mobile applications - including but not limited to www.livenation.com, www.ticketmaster.com, www.ticketsnow.com, and www.ticketexchangebyticketmaster.com - (collectively, the "Site"), and your purchase, possession, or use of any Live Nation or Ticketmaster tickets, products, or services.

*See*, https://help.ticketmaster.com/s/article/Terms-of-Use?



*See*, https://help.livenation.com/s/article/Terms-of-Use?

56.     On information and belief, the Terms of Use governing the www.ticketmaster.com
website is subject to the control of Live Nation Entertainment, Inc.  For example, the Terms of
Use governing the www.ticketmaster.com website specifies that (a) all disputes are resolved by
arbitration and (b) to initiate an arbitration proceeding, a letter requesting arbitration and
describing the claim must be sent to Live Nation Entertainment, Inc.'s General Counsel.

To begin an arbitration proceeding, you must send a letter requesting arbitration and describing your claim to: Live Nation Entertainment, Inc., 9348 Civic Center Drive, Beverly Hills, CA 90210, Attn: General Counsel. You may download the forms located at http://www.jamsadr.com. The arbitration will be conducted by JAMS under its Streamlined Arbitration Rules and Procedures or, if applicable, its Comprehensive Arbitration Rules and Procedures, and any applicable supplemental rules including its Consumer Arbitration Standards of Minimum Fairness. The JAMS Rules are available online at http://www.jamsadr.com or by calling (800) 352-5267. Payment of all filing, administration and arbitrator fees will be governed by JAMS's rules. We will automatically reimburse administration and arbitrator fees for claims totaling less than $10,000 regardless of who the prevailing party is (unless the arbitrator determines the claims are frivolous), but we will not pay for attorneys' fees unless ordered to do so by the arbitrator. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location.

*See*, https://help.ticketmaster.com/s/article/Terms-of-Use?   The Terms of Use governing the
www.ticketmaster.com website also specifies that an individual may opt out of the Ticketmaster
mobile messaging service by sending an email request to Live Nation Entertainment, Inc. at
texthelp@livenation.com.

You may opt out of any alerts by replying to an alert with the text message "STOP" or by sending the text message "STOP" to the shortcode provided. If you opt out by sending us a text message, we will send you a text to confirm your request. If you do not want to receive a confirmation text message, you may opt out by sending an email to texthelp@livenation.com with your request and mobile device number. It may take us up to 10 days to remove your mobile device number from our database. For additional help, text "HELP" to the shortcode provided, or email texthelp@livenation.com

*Id.* The Terms of Use governing the www.ticketmaster.com website also specifies that any questions, comments or complaints regarding the Terms of Use or the www.ticketmaster.com website should be directed to Live Nation Entertainment, Inc.'s General Counsel.

### 20. Questions

If you have any questions, comments or complaints regarding these Terms or the Site, please contact us at:

Live Nation Entertainment, Inc.
Attn: General Counsel
9348 Civic Center Drive
Beverly Hills, CA 90210
(800) 653-8000

*Id.*

57.    On information and belief, the www.ticketmaster.com website and the www.livenation.com website have a joint Opt-Out link to their AdChoices notification.



*See*, http://preferences-mgr.truste.com/?pid=ticketmaster01&aid=ticketmaster01&type=ticketmaster.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,849,720

58.    GEE repeats, re-alleges, and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

59.    On information and belief, Ticketmaster and Live Nation, in violation of 35 U.S.C. § 271, have infringed at least claims 1, 6, 7, 10, 11, 14, 15, 17, 21, 22 and 25 of the '720 Patent by making, using, offering to sell and/or selling in this judicial district and elsewhere in the United States the Accused Systems that embody or practice the claimed inventions of the '720 Patent, either literally or under the doctrine of equivalents, either individually and/or jointly.

60.    For example, the Accused Systems infringe Claim 1 of the '720 Patent because each is:

> "[a] system for selling and exchanging electronic tickets for entertainment events, comprising:
>
> a patron interface via which a first patron purchases an electronic ticket for an entertainment event at a venue from a vendor;
>
> a database storing:
>
> > (i)    identifying information about at least the first patron and a second patron, and
> >
> > (ii)   a token representing the electronic ticket purchased via said patron interface by the first patron, said token being associated with the identifying information about the first patron that is stored in the database;
>
> a trading system via which the electronic ticket for the entertainment event that was purchased by the first patron, and represented by the token stored in said database, can be transferred by the first patron to the second patron, wherein the association of said token is transferred from the identifying information about the first patron to the identifying information about the second patron within said database;
>
> a payment system that stores profile information regarding at least an account of the first patron and an account of the second patron, and that is configured to:

(i)    automatically debit the account of the first patron for the purchase of the electronic ticket,

(ii)    automatically credit the account of the first patron when the electronic ticket is transferred to the second patron via said trading system, and

(iii)    automatically debit the account of the second patron when the electronic ticket is transferred to the second patron via said trading system; and

an entry system having at least one access control device with a reader at the venue of a current event, which is responsive to presenting of identifying information pertaining to an entering patron at said reader to:

(i)    communicate with said database to determine that the presented identifying information pertaining to the entering patron is associated with the token representing the electronic ticket for the entertainment event which is the current event, and

(ii)    in response to said determination to automatically provide the entering patron who is determined to be associated with the electronic ticket with physical access to the venue at which the entertainment event is being presented."

61.    On information and belief, the Accused Systems comprise a patron interface (including the www1.ticketmaster.com and concerts1.livenation.com webpages accessible from the www.ticketmaster.com, www.livenation.com, www.ticketexchangebyticketmaster.com, www.ticketsnow.com, and www.houseofblues.com network of websites and the Ticketmaster and Live Nation mobile apps) which enables individuals having a registered Ticketmaster and/or Live Nation customer account to purchase electronic tickets from an inventory of electronic tickets.



*See*, https://www1.ticketmaster.com.



*See*, https://concerts1.livenation.com.

On information and belief, the www1.ticketmaster.com, concerts1.livenation.com www.ticketmaster.com, and www.livenation.com websites are intimately coordinated to market and promote electronic ticket sales. For example, the www.livenation.com website is configured to market and promote electronic ticket sales for entertainment events hosted at event venues

owned by clients with whom Ticketmaster has contracted for implementation and use of the Accused Systems, and re-direct registered Live Nation customers from the www.livenation.com website to the www1.ticketmaster.com website to enable the purchase of the electronic tickets. Similarly, the www.ticketmaster.com website is configured to market and promote electronic ticket sales for entertainment events hosted at event venues owned, leased, rented and/or operated by Live Nation, and re-direct registered Ticketmaster customers from the www.ticketmaster.com website to the concerts1.livenation.com website to enable the purchase of the electronic tickets.

62.    On information and belief, the Accused Systems comprise one or more network databases which store Ticketmaster and/or Live Nation customer account profiles containing identifying information about each individual having a registered customer account, including an account number, account password, account member name, street address, email address, phone number, mobile phone number, credit card issuer, credit card account number and credit card expiration date.





*See*, https://my.ticketmaster.com/settings?tm_link=mytm_welcome_EditProfile.



*See*, https://www.ticketmaster.com/member/payment_options.   On information and belief, the

www1.ticketmaster.com,      concerts1.livenation.com,      www.ticketmaster.com,      and

www.livenation.com websites are intimately linked to the same database or database network

which stores the profiles containing identifying information about each individual having a registered Ticketmaster and/or Live Nation customer account. On information and belief, an individual may access his/her registered Ticketmaster and/or Live Nation customer account using the same email address and password via the www.ticketmaster.com Sign In page or via the www.livenation.com Sign In page.

63.    On information and belief, the Accused Systems comprise one or more network databases that stores a token, which represents an electronic ticket purchased by an individual having a registered Ticketmaster and/or Live Nation customer account, and which is associated with identifying information about the individual (e.g., account number, account member name, email address, mobile phone number, and/or credit card account number) stored on a network database.

64.    On information and belief, the Accused Systems include a trading system through which an electronic ticket purchased by an individual having a registered Ticketmaster and/or Live Nation customer account can be transferred to another individual having a registered Ticketmaster and/or Live Nation customer account.



*See*, https://help.ticketmaster.com/s/article/Sell-Tickets-with-Ticketmaster. On information and belief, when an electronic ticket is transferred on the Accused Systems by an individual having a

registered Ticketmaster and/or Live Nation customer account to another individual having a registered Ticketmaster and/or Live Nation customer account, the association of the token for the transferred ticket is changed to the stored identifying information (e.g., account number, account member name, email address, mobile phone number, and/or credit card account number) about the individual to whom the electronic ticket is transferred.

65.    On information and belief, the Accused Systems include an e-commerce payment system that is configured to utilize banking association networks to facilitate primary market electronic ticket sales by and secondary market electronic ticket sales between individuals having registered Ticketmaster and/or Live Nation customer accounts on the Accused Systems.  On information and belief, the payment system stores account profile information (e.g., credit card account issuer, credit card account owner name, credit card account owner address, credit card account number, credit card expiration date) for each individual having a registered Ticketmaster and/or Live Nation customer account.





*See*, https://www.ticketmaster.com/member/payment_options. On information and belief, the payment system is configured to: (1) automatically debit the account corresponding to the account profile information of the individual who purchases an electronic ticket on the Accused Systems; (2) automatically credit the account corresponding to the account profile information of the individual who transfers an electronic ticket on the Accused Systems; and (3) automatically debit the account corresponding to the account profile information of the individual to whom an electronic ticket is transferred on the Accused Systems. For example, on information and belief, the Accused Systems include an e-commerce platform having software code programmed to implement various payment method options and payment processors for authorizing electronic ticket sale transactions on the Accused Systems and facilitating settlement of the sales transactions by debiting the account of the individual who purchases an electronic ticket on the primary or secondary market and crediting the account of the individual who sells an electronic ticket on the secondary market.





*See*, https://www.ticketmaster.com/sell. When an individual having a registered Ticketmaster and/or Live Nation customer account purchases an electronic ticket on the Accused Systems, the payment system payment processor transmits an authorization request for the transaction and facilitates settlement of the transaction for automatically debiting the individual's account. When an individual having a registered Ticketmaster and/or Live Nation customer account sells an electronic ticket to another individual having a registered Ticketmaster and/or Live Nation customer account, the payment system payment processor transmits an authorization request for the transaction and facilitates settlement of the transaction for automatically crediting the account of the individual who is selling the electronic ticket and debiting the account of the individual who is purchasing the electronic ticket.

66.     On information and belief, the Accused Systems include an entry system that employs an access control device with a reader configured to receive identifying information pertaining to an individual having a registered Ticketmaster and/or Live Nation customer account contained in a QR code or barcode presented at the event venue, communicate with the Accused Systems network database to determine whether the received identifying information corresponds to the identifying information associated with a stored token representing a valid and authentic

electronic ticket, and, in response to a determination that the received identifying information is associated with a stored token for a valid and authentic electronic ticket, automatically provide the individual having verified valid and authentic electronic ticket rights with physical access to the venue.

**Ticketmaster**

67.    On information and belief, Ticketmaster has infringed at least claims 1, 6, 7, 10, 11, 14, 15, 17, 21, 22 and 25 of the '720 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling in this judicial district and elsewhere in the United States, without license or authority from GEE, electronic ticket sales and venue access control technology as claimed in the '720 Patent, including without limitation Accused Systems such as the TM+ System and the TM+ System implementing the Presence venue access control platform.

68.    For example, as the architect of the Accused Systems set forth above in paragraphs 61 - 66, Ticketmaster makes and combines all of the elements of the invention recited in claim 1 of the '720 Patent, and puts into service, controls, and benefits from the invention recited in claim 1 of the '720 Patent.  Ticketmaster makes and uses the invention recited in claim 1 of the '720 Patent by deploying, maintaining, and operating the integrated primary and secondary electronic ticket sales platform of the Accused Systems set forth above in paragraphs 61 - 65, and by implementing the entry system of the Accused Systems set forth above in paragraph 66 at event venues located in this district and elsewhere in the United States under contract with Ticketmaster or owned, rented, leased and/or operated by Live Nation or other affiliates.

69.    On information and belief, Ticketmaster has actively induced infringement of at least claims 1, 6, 7, 10, 11, 14, 15, 17, 21, 22 and 25 of the '720 Patent in violation of 35 U.S.C. §

271(b), by knowingly encouraging and facilitating third parties to make and use Accused Systems in this judicial district and elsewhere in the United States, without license or authority from GEE, with knowledge of or willful blindness to the fact that Ticketmaster's actions will induce third parties, including but not limited to event venue owners with whom Ticketmaster has contracted to implement and use the Accused Systems, to directly infringe the '720 patent.

70.    On information and belief, in or around September 2014 in connection with Ticketmaster's prosecution of its U.S. Patent Application Serial No. 14/202,218 (the "Ticketmaster '218 application") entitled "Centralized And Device-Aware Ticket-Transfer System and Method," Ticketmaster had knowledge of U.S. Patent Application Publication No. US2011/0238454, which corresponds to the patent application that issued as the'720 Patent.  On January 13, 2015, the U.S. Patent Examiner rejected claims of the Ticketmaster '218 application as being anticipated under 35 U.S.C §102(b) by US2011/0238454, and also cited the '720 Patent to Ticketmaster.  On information and belief, in or around January 2015 Ticketmaster became aware of and had actual knowledge of the '720 Patent.  On April 13, 2015, Ticketmaster filed an Amendment and Response in the '218 application in which it responded the U.S. Patent Examiner's claim rejection based on US2011/0238454.

71.    On information and belief, Ticketmaster's infringement of the '720 Patent has been in willful disregard of GEE's patent rights, making this an exceptional case, and entitling GEE to enhanced damages pursuant to 35 U.S.C. § 284, and to its attorney fees and costs incurred prosecuting this action under 35 U.S.C. § 285.

**Live Nation**

72.    On information and belief, Live Nation has infringed at least claims 1, 6, 7, 10, 11, 14, 15, 17, 21, 22 and 25 of the '720 Patent under 35 U.S.C. § 271(a), literally and/or under the

doctrine of equivalents, by making and/or using in this judicial district and elsewhere in the United States, without license or authority from GEE, electronic ticket sales and venue access control technology as claimed in the '720 Patent, including without limitation Accused Systems such as the TM+ System and the TM+ System implementing the Presence venue access control platform.

73.     For example, as the architect of the Accused Systems set forth above in paragraphs 61 - 66, Live Nation makes and combines all of the elements of the invention recited in claim 1 of the '720 Patent, and puts into service, controls, and benefits from the invention recited in claim 1 of the '720 Patent.  Live Nation makes and uses the invention recited in claim 1 of the '720 Patent by deploying, maintaining, and operating the integrated primary and secondary electronic ticket sales platform of the Accused Systems set forth above in paragraphs 61 - 65, and by implementing the entry system of the Accused Systems set forth above in paragraph 66 at event venues that it owns, rents, leases and/or operates in this district and elsewhere in the United States.

74.     On information and belief, Live Nation's infringement of the '720 Patent has been in willful disregard of GEE's patent rights, making this an exceptional case, and entitling GEE to enhanced damages pursuant to 35 U.S.C. § 284, and to its attorney fees and costs incurred prosecuting this action under 35 U.S.C. § 285.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO 10,217,065**

75.     GEE repeats, re-alleges, and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

76.     On information and belief, Ticketmaster and Live Nation, in violation of 35 U.S.C. § 271, have infringed and continue to infringe at least claims 15, 16, and 17 of the '065 Patent by making, using, offering to sell and/or selling in this judicial district and elsewhere in the United States the Accused Systems implementing the transfer notification feature that embody and

practice the claimed inventions of the '065 Patent, either literally or under the doctrine of equivalents, either individually and/or jointly.

77.    For example, the Accused Systems implementing the transfer notification feature infringe Claim 15 of the '065 Patent because each is:

"[a] system for the sale and dissemination of tickets for entertainment events, comprising:

a patron interface via which a patron can purchase electronic tickets to an entertainment event at a venue for that patron and for other individuals;

a storage system which stores information regarding each electronic ticket purchased by the patron, said information associating each electronic ticket with a particular person;

a notification system which is responsive to a purchase of an electronic ticket by the patron for at least one individual other than said patron, to automatically provide a notification to the at least one individual that a patron has purchased a ticket to an entertainment event for that individual, and such ticket is available to said individual; and

an entry system which is responsive to presentation of information pertaining to an individual to

(i)    communicate with said storage system and determine whether that individual is associated with an electronic ticket stored in said storage system for a current entertainment event, and

(ii)    permit individuals who are associated with electronic tickets for the current event to enter the venue at which the event is being presented.

78.    On information and belief, the Accused Systems comprise a patron interface (including the www1.ticketmaster.com and concerts1.livenation.com webpages accessible from the www.ticketmaster.com, www.livenation.com, www.ticketexchangebyticketmaster.com, www.ticketsnow.com, and www.houseofblues.com network of websites and the Ticketmaster and Live Nation mobile apps) which enables an individual having a registered Ticketmaster and/or Live Nation customer account to purchase electronic tickets for himself/herself and other individuals.



*See*, https://www1.ticketmaster.com.



*See*, https://concerts1.livenation.com.

79. On information and belief, the Accused Systems comprise a network storage system which stores a token representing each electronic ticket purchased by an individual having a registered Ticketmaster and/or Live Nation customer account, and associating the electronic ticket with identifying information about an individual stored on the network storage system.

80.     On information and belief, the Accused System comprises a notification system which is responsive to the purchase of an electronic ticket by an individual having a registered Ticketmaster and/or Live Nation customer account for a designated individual to automatically provide an email or text message notification to the designated individual that the purchased electronic ticket is available for transfer to the designated individual.



### Transfer with the Ticketmaster App

1. Open the **Ticketmaster App** and sign in to your account.

2. Navigate to **My Events** and select the event to view your tickets.

3. Tap **Transfer**.
   NOTE: If the Transfer button is grayed out, your tickets are not eligible for transfer.

4. Select the tickets you'd like to transfer and tap **Transfer To**.

5. Enter your recipient's information, including their mobile number or email address and an optional note.
   TIP: If a mobile number is entered, a link to claim the ticket will open within a text message–all you need to do is press send! If an email address is entered, a link to claim the ticket is sent via an email message.

6. Tap **Transfer Ticket**.

Your transferred tickets will show as sent. When your recipient has accepted them, the ticket will show as claimed. You will receive an email confirming the ticket has been accepted by your recipient. After a successful transfer, the ticket is no longer valid for entry from your account.



### Transfer with a Desktop or Laptop

1. Sign in to your Ticketmaster account.

2. Navigate to your event by clicking your name in the top right and clicking **My Tickets**.

3. Find your event and click **See Details**.

4. Click **Transfer Tickets**.
   NOTE: If the Transfer button is grayed out, your tickets are not eligible for transfer.

5. Select the tickets you'd like to transfer and click **Continue**.

6. Enter your recipient's information, including their email address and an optional note.

7. Click **Send**.

Your transferred tickets will show as sent. When your recipient has accepted them, the ticket will show as claimed. You will receive an email confirming the ticket has been accepted by your recipient. After a successful transfer, the ticket is no longer valid for entry from your account.

*See*, https://help.ticketmaster.com/s/article/How-do-I-transfer-tickets?

81.     On information and belief, the Accused Systems include an entry system that is responsive to the presentation of identifying information contained in a QR code or barcode pertaining to an individual to (i) communicate with the network storage system to determine whether the identifying information presented by the individual is associated with a valid and authentic electronic ticket stored on the network storage system, and (ii) permit individuals presenting identifying information associated with valid and authentic electronic tickets stored on the network storage system to enter the venue for the entertainment event.

**Ticketmaster**

82.     On information and belief, Ticketmaster has infringed and continues to infringe at least claims 15, 16, and 17 of the '065 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling in this judicial district and elsewhere in the United States, without license or authority from GEE, electronic ticket sales and venue access control technology as claimed in the '065 Patent, including without limitation Accused Systems such as the TM+ System and the TM+ System implementing the Presence venue access control platform.

83.     For example, as the architect of the Accused Systems set forth above in paragraphs 78 - 81, Ticketmaster  makes and combines all of the elements of the invention recited in claim 15 of the '065 Patent, and puts into service, controls, and benefits from the invention recited in claim 15 of the '065 Patent.  Ticketmaster makes and uses the invention recited in claim 15 of the '065 Patent by deploying, maintaining, and operating the verified electronic ticket sales platform and notification feature of the Accused Systems set forth above in paragraphs 78 - 80, and by implementing the entry system of the Accused Systems set forth above in paragraph 81 at event

venues located in this district and elsewhere in the United States under contract with Ticketmaster or owned, rented, leased and/or operated by Live Nation or other affiliates.

84.     On information and belief, Ticketmaster has actively induced, and continues to induce, third parties, including event venue owners with whom Ticketmaster has contracted to implement and use the Accused Systems, to infringe at least claims 15, 16, and 17 of the '065 Patent under 35 U.S.C. § 271(b), by encouraging and facilitating them to make and/or use in this judicial district and elsewhere in the United States the Accused Systems such as the TM+ System implementing the transfer notification feature, without license or authority from GEE, with knowledge of or willful blindness to the fact that Ticketmaster's actions will induce third parties, including but not limited to event venue owners with whom Ticketmaster has contracted to implement and use the Accused Systems, to directly infringe the '065 patent.  Ticketmaster had actual knowledge of the '065 Patent at least upon the filing or service of this Complaint.

85.     On information and belief, Ticketmaster's infringement of the '065 Patent has been in willful disregard of GEE's patent rights, making this an exceptional case, and entitling GEE to enhanced damages pursuant to 35 U.S.C. § 284, and to its attorney fees and costs incurred prosecuting this action under 35 U.S.C. § 285.

**Live Nation**

86.     On information and belief, Live Nation has infringed and continues to infringe at least claims 15, 16, and 17 of the '065 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents, by making and/or using in this judicial district and elsewhere in the United States, without license or authority from GEE, electronic ticket sales and venue access control technology as claimed in the '065 Patent, including without limitation Accused Systems such as the TM+ System and the TM+ System implementing the Presence venue access control platform.

87.     For example, as the architect of the Accused Systems set forth above in paragraphs 78 - 81, Ticketmaster  makes and combines all of the elements of the invention recited in claim 15 of the '065 Patent, and puts into service, controls, and benefits from the invention recited in claim 15 of the '065 Patent.  Live Nation makes and uses the invention recited in claim 15 of the '065 Patent by deploying, maintaining, and operating the integrated primary and secondary electronic ticket sales platform of the Accused Systems set forth above in paragraphs 78 - 80, and by implementing the entry system of the Accused Systems set forth above in paragraph 81 at event venues that it owns, rents, leases and/or operates in this district and elsewhere in the United States.

88.     On information and belief, Live Nation's infringement of the '065 Patent has been in willful disregard of GEE's patent rights, making this an exceptional case, and entitling GEE to enhanced  damages  pursuant  to  35 U.S.C.  § 284,  and  to  its  attorney  fees  and  costs  incurred prosecuting this action under 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, GEE hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, GEE respectfully requests that the Court enter judgment in its favor and against Ticketmaster and Live Nation as follows:

a.  finding that Ticketmaster and Live Nation infringe, either literally and/or under the doctrine of equivalents, one or more claims of each of the Patents-in-Suit;

b.  awarding GEE damages under 35 U.S.C. §284, or otherwise permitted by law, including supplemental damages for any continuing post-verdict infringement;

c.   awarding GEE costs incurred in this action (including all disbursements) and attorney

fees pursuant to 35 U.S.C. §285, or otherwise permitted by law;

d.   awarding increased damages for Defendants' willful infringement;

e.    awarding GEE pre-judgment and post-judgment interest on the damages award and

costs; and

f.   awarding such other costs and further relief that the Court deems just and equitable.

Date:   April 23, 2021                                Respectfully submitted,

By: /s/ *Raymond W. Mort, III*_____
        Raymond W. Mort, III
        Texas State Bar No. 00791308
        raymort@austinlaw.com
        100 Congress Avenue, Suite 2000
        Austin, Texas 78701
        Tel/Fax: 512-865-7950

        Robert K. Goethals
        David Leichtman
        Leichtman Law PLLC
        228 East 45th Street, Suite 605
        New York, NY 10017
        Phone: (212) 419-5210
        rgoethals@leichtmanlaw.com
        dleichtman@leichtmanlaw.com

        Attorneys for Plaintiff
        Global eTicket Exchange Ltd.