**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| GLOBAL ETICKET EXCHANGE LTD., | |
| *Plaintiff*, | CASE NO. 6:21-CV-00399-ADA |
| v. | PATENT CASE |
| TICKETMASTER L.L.C. and LIVE NATION WORLDWIDE, INC., | JURY TRIAL DEMANDED |
| *Defendants*. | |

**TICKETMASTER L.L.C. AND LIVE NATION WORLDWIDE, INC.'S**
**REPLY CLAIM CONSTRUCTION BRIEF**

## <u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ........................................................................................................... 1

II.     DISPUTED TERMS ....................................................................................................... 1

    A.      Term No. 3: "identifying information . . ." ............................................................ 1

        1.      The claim language and specification support Defendants' constructions . 2

        2.      Prosecution disclaimer precludes Plaintiff's interpretation ....................... 4

    B.      Term No. 1: "token representing the electronic ticket" .......................................... 7

    C.      Term No. 2: "electronic ticket(s)" .......................................................................... 8

    D.      Term No. 4: "a trading system . . ." ........................................................................ 8

    E.      Term No. 5: "an entry system . . ." ....................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ancora Techs., Inc. v. LG Elecs. Inc.*,
   No. 1-20-CV-00034, 2020 WL 4825716 (W.D. Tex. Aug. 19, 2020) ....................................2

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
   713 F.3d 1090 (Fed. Cir. 2013).........................................................................................6

*Halliburton v. Energy Servs., Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008).........................................................................................9

*Lighthouse Consulting Grp., LLC v. BB&T Corp.*,
   476 F. Supp. 3d 532 (W.D. Tex. 2020)...........................................................................2, 3

*Lone Star Tech. Innovations, LLC v. Asustek Computer Inc.*,
   No. 6:19-CV-00059, 2020 WL 6811484 (E.D. Tex. July 31, 2020) .......................................8

*Omega Eng'g, Inc, v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003).......................................................................................2, 7

**Statutes**

35 USC 112, ¶6..............................................................................................................8, 9, 10

## <u>TABLE OF ABBREVIATIONS</u>

**Parties**

| | |
|---|---|
| "Plaintiff" or "GEE" | Plaintiff Global eTicket Exchange Ltd |
| "Defendants" | Ticketmaster L.L.C. and Live Nation Worldwide, Inc. |

**Defined Terms**

| | |
|---|---|
| "'720 patent" | U.S. Patent No. 8,849,720 |
| "'065 patent" | U.S. Patent. No. 10,217,065 |
| "Asserted Patents" | The '720 and '065 patents, collectively |
| "Asserted Claims" | Claims 1, 6, 7, 10, 11, 14, 17 21, 22, and 25 of the '720 patent; and claims 15–17 of the '065 patent |
| "Plaintiff's Contentions" | Plaintiff's Preliminary Infringement Contentions served on July 20, 2021 |
| "Defendants' Opening Brief" or "Op. Br." | Defendants Opening Claim Construction Brief (Dkt. 21) |
| "Plaintiff's Response" or "Resp." | Plaintiff's Responsive Claim Construction Brief (Dkt. 22) |

**TABLE OF EXHIBITS**

| Ex. | Description | Beg. Bates |
|---|---|---|
| 1 | Declaration of C. Douglass Locke, Ph.D ("Locke Decl.") | N/A |
| 1-A | Curriculum Vitae of C. Douglass Locke, Ph.D. | N/A |
| 2 | U.S. Patent No. 8,849,720 ("'720 patent") | GEE 000001 |
| 3 | U.S. Patent No. 10,217,065 ("'065 patent") | GEE 000019 |
| 4 | Plaintiff's Preliminary Infringement Contentions | N/A |
| 5 | U.S. Patent No. 6,067,532 ("Gebb") | TICKET-PA_0001187 |
| 6 | U.S. Patent No. 6,842,741 ("Fujimura") | TICKET-PA_0001446 |
| 7 | '720 patent file history, July 30, 2012, Remarks | GEE 000292 |
| 8 | '720 patent file history, December 26, 2013, Request for Reconsideration | GEE 000112 |
| 9 | '720 patent file history, March 24, 2014, Appeal Brief | GEE 000077 |
| 10 | '065 patent file history, March 30, 2013, Remarks | GEE 000962 |
| 11 | '065 patent file history, October 25, 2016, Reply Brief | GEE 000876 |
| 12 | Data Communications Dictionary ("Token") | TICKET_0002110 |
| 13 | Data Telecommunications Dictionary ("E" section) | TICKET_0002114 |
| 14 | Dictionary of Computer and Internet Terms ("Token") | TICKET_0002118 |
| 15 | Dictionary of Computer and Internet Terms ("E" section) | TICKET_0002121 |
| 16 | Hargrave's Communications Dictionary ("Token") | TICKET_0002126 |
| 17 | Hargrave's Communications Dictionary ("E" section) | TICKET_0002130 |
| 18 | Microsoft Computer Dictionary ("Token") | TICKET_0002136 |
| 19 | Microsoft Computer Dictionary ("E" section) | TICKET_0002139 |
| 20 | Random House Webster's College Dictionary ("Token" and "E" section) | TICKET_0002144 |
| 21 | The American Heritage Dictionary ("Token" and "E" section) | TICKET_0002148 |
| 22 | Authoritative Dictionary of IEEE Standards Terms ("Token") | TICKET_0002153 |
| 23 | Authoritative Dictionary of IEEE Standards Terms ("E" section excerpts) | TICKET_0002157 |
| 24 | The New Penguin Dictionary of Computing ("Token") | TICKET_0002161 |
| 25 | The New Penguin Dictionary of Computing ("E" section excerpts) | TICKET_0002164 |
| 26 | Webster's New World Dictionary of Computer Terms ("Token") | TICKET_0002168 |
| 27 | Webster's New World Dictionary of Computer Terms ("E" section excerpts) | TICKET_0002171 |
| 28 | '065 patent file history, December 28, 2015, Appeal Brief | GEE 000969 |

## I.     INTRODUCTION

The Asserted Patents claim a "ticketless" system that purports to eliminate the need for bearer-type tickets. The claimed system is "ticketless" in the sense that physical possession of a "ticket" for a specific event—irrespective of the form the ticket takes—is not required to gain entry. Instead, the patron's identity replaces the ticket as a means for entry.[1] In short: the patron's identity is "on the list," and this centralized list is checked at the door. This "ticketless" nature of the claimed system permeates every aspect of the intrinsic record.

Yet, Plaintiff wants to read out these limitations. It pretends "physical" possession of a ticket is limited to **paper** tickets. *See* Resp. at 9 ("the claimed electronic ticketing systems and methods are distinguished over bearer-type tickets where physical possession of a **paper** ticket is the sole basis for establishing ownership of ticket rights. . ."). But this is not what the inventors told the public. Relying upon any **physical** ticket for a specific event at entry—**whether held in paper or in a mobile phone**—was disparaged in the specification, and clearly and undeniably disavowed during prosecution. The plain language of the claims and specification, with the numerous disclaimers in the Asserted Patent's prosecution history, prevent Plaintiff from recapturing prior art.

## II.    DISPUTED TERMS[2]

### A.     Term No. 3: "identifying information . . ."

Plaintiff wants to argue that these claim elements can be satisfied by the presentation of an electronic ticket at entry—specifically, a ticket in the form of a bar code or QR code. This

---

[1] *See, e.g.*, '720 patent at claim 1 ("an entry system having at least one access control device with a reader at the venue of a current event, which is responsive to presenting of identifying information pertaining to an entering patron at said reader. . .").

[2] This Reply addresses the terms in the order addressed in Plaintiff's Response, but maintains the numbering in Defendants' Opening Brief.

interpretation not only contradicts the plain language of the claims and supporting specification, but it is also foreclosed by clear and unambiguous prosecution disclaimer. *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1324–25 (Fed. Cir. 2003) (explaining that prosecution disclaimer is a matter of claim construction). The Court must resolve this dispute. *See Ancora Techs., Inc. v. LG Elecs. Inc.*, No. 1-20-CV-00034, 2020 WL 4825716, at *9 (W.D. Tex. Aug. 19, 2020) (citation omitted) ("Because the Parties disagree about the scope of the term, the term requires construction by the Court."); *see also Lighthouse Consulting Grp., LLC v. BB&T Corp.*, 476 F. Supp. 3d 532, 537 (W.D. Tex. 2020).

### 1.   The claim language and specification support Defendants' constructions

It cannot be disputed that the physical "ticketless" operation is integral to the systems and methods recited by the Asserted Patents. As just one example, annotated Figure 7 below illustrates "the operations that occur at the initiation of an event." '720 patent, Fig. 7, 18:44–64.



FIG. **7** illustrates the operations that occur at the initiation of the event. At step **80**, seating system **48** determines an optimal configuration for all of the tickets that have been sold. This configuration is downloaded to the entry system server **40**, at step **82**. As additional tickets are sold or exchanged during this time, the entry system server is updated with the appropriate seating information. Once the venue opens its gates, patrons use their identification devices to enter the parking facilities and the access-control mechanisms, at step **84**. Once a device is employed at any of these points, the member identification is transmitted via a reader to the entry server at step **86**, which forwards the information to the central server **26** at step **88**, to prevent any further trading of the electronic ticket. The entry server **40** queries the patron's account to see if an electronic ticket token is present for the event, and authorizes access to the parking facilities and the venue, as appropriate. In those situations where seats are assigned, as the patron's identification device is read at the access-control mechanism **42**, the seating map **20** is checked and the printer at the access-control point produces a physical seating assignment for the patron, at step **92**.

*Fig. 7*

2

At step 84, patron "identification devices" are read at entry points. *Id*. Member identification is extracted by the reader and transmitted to an "entry server" 40 at step 86. *Id*. Entry server 40 then utilizes the extracted member identification information to authorize entry at step 88. *Id*. Plaintiff concedes, as it must, that "the presentation of identifying information at an entry system . . . is used for verifying and authorizing the patron's ticket rights." Resp. at 10.

But this is where the parties diverge. Plaintiff argues that the Asserted Patents leave open the possibility that the presented "identifying information" could be an electronic ticket for an event in the form of a barcode stored on a mobile phone. In doing so, however, Plaintiff repeatedly mischaracterizes the specification. For example, Plaintiff's Response misconstrues a passage disclosing that alternative forms of identification could utilize barcodes as evidence that barcoded tickets fall within the Asserted Patents' ambit:

> "Alternative forms of identification might be employed for attendees who do not possess membership identification devices. For example, a barcoded paper or card might be issued when the ticket is purchased, or the attendee might provide a driver's license number or social security number. A suitable barcode reader and/or keypad can be included with the access-control device for each of the possible types of input."

Resp. at 10–11 citing '720 patent, 7:18–25. But this "barcode" is not a representation of a ticket for a specific event, as Plaintiff implies. Instead, just like a driver's license number or social security number, it is a representation of an individual's identification for attendees who do not possess "membership identification devices," as the passage clearly states. *See also id.* at 13:64–14:5 ("Membership rights and privileges are distinct from ticket property rights. Ticket property rights are particular to a specific event and constitute the basic commodities that can be purchased and traded by members of the system. Tickets are not physical in nature, but rather they are electronic proxies for the associated rights. Membership rights are benefits that the patron receives, and these rights cannot be traded. Membership rights vary by the type of membership the patron

possesses."). Accordingly, the membership in question is not one for the event that the attendee is trying to enter, but for the centralized "ticket exchange system." *See, e.g.*, '720 patent, 3:17–32.

Similarly, Plaintiff's Response struggles to interpret a passage describing the identification confirmation process as not "preclud[ing] the inclusion of electronic ticket right information among the information contained in the 'identification device' or 'paper barcode or card' presented to the entry system access control device reader." Resp. at 11 citing '720 patent, 6:65–7:7. But nothing in the cited passage remotely suggests that the entry system obtains information based on ***physical*** possession of electronic tickets. Instead, it describes the "presentation of the proper identification" and providing the "patron's identity to the server 40 to confirm ownership of the proper electronic ticket for the event." '720 patent, 6:65–7:7.

Finally, Plaintiff contorts the Asserted Patents' numerous "printer" disclosures to mean that it actually supports their interpretation because it "presupposes other circumstances where the patron is in possession of such information prior to admission and there is no need for a printer." Resp. at 11–12. These disclosures do nothing of the sort. The post-entry printers are intended to alleviate a shortcoming of a system where the attendee arrives with only their identification. How would they know where they should sit, or what other rights they may be entitled to? The printers are there to provide that information. '720 patent, 7:26–33. The passage does not "presuppose" that the patron can use this information to gain entry, or otherwise that they use an electronic ticket to be admitted.

### 2.   Prosecution disclaimer precludes Plaintiff's interpretation

In addition to the plain language of the claims, the Asserted Patents' file histories foreclose the possibility that presentation of physical possession of a ticket for an event—in any form—can be the "identification" used to gain entry. Plaintiff's Response quickly glosses over these disclaimers and fails to cite even a single case in their favor. *See* Resp. at 12–13. Indeed, Plaintiff's

terse treatment of the office actions *in this case* contrasts starkly with its verbose analysis of an office action *in another case* that has no relevance whatsoever to the dispute before the Court.[3]

As detailed in Defendants' Opening Brief, applicant struggled to overcome rejections to the Gebb, Fujimura, and Mann patents during prosecution of the '720 patent. *See* Op. Br. at 11–13; Defendants' Exs. 7, 8. A final rejection ensued, which applicant appealed. *See* Ex. 9. In its March 24, 2014 Appeal Brief directly addressing the entry system recited by claim 1, applicant clearly and unmistakably disavowed the physical presentation of a ticket or electronic information representing a ticket to gain entry to a venue:

> Claim 1 also recites an entry system with a reader. The entry system is responsive to the presentation of information pertaining to a patron, e.g., the patron's identification, to communicate with the database to determine whether a token representing an electronic ticket for an event is stored in the database, in association with information about that patron. Thus, when a patron presents his or her identification at an entertainment venue, the database is checked to see whether a token representing a ticket for an event at that venue is associated with that individual. . .
>
> By means of such an arrangement, *physical possession of the ticket by the user, or electronic information representing a ticket, is not required*.

*Id*. at 4–5. Plaintiff's Response tries to brush off this disclaimer because it appears in Section III's Summary of applicant's Appeal Brief. Resp. at 12. But this disclaimer does not appear in a vacuum; it sets the stage for arguments made in Section IV(A)(2) of the Appeal Brief

---

[3] Plaintiff's lengthy introduction regarding an unrelated prosecution history is irrelevant. Resp. at 3–5. Plaintiff provides no authority suggesting that a response to a 2015 office action (which was not even submitted by a party to this case) distinguishing different patents on different grounds is in any way relevant to the present issues. Even if it were relevant, which it is not, Plaintiff misrepresents that it is inconsistent with Defendant's arguments today. There, Live Nation Entertainment, Inc. argued simply that the "token" in the relevant paragraph represented a "membership" or "membership card" that identifies the individual. Because this identification information was specific to the individual, not his device, it could be transferred to another device. Live Nation did not make any argument that this was an "electronic ticket token" as Plaintiff falsely suggests. *See* Resp. at 4.

distinguishing claims 1 and 17 from Fujimura's electronic ticketing system, in which patrons presented electronic tickets at entry:

> The Fujimura patent discloses an approach in which electronic tickets are handled in a manner analogous to the way that paper tickets are handled. . . Thus, in the system of the Fujimura patent, ***physical possession of the electronic ticket, in appropriate equipment, is required to use the ticket, in a manner similar to paper tickets***.

*Id*. at 11.

The prosecution history disclaimers in '065 patent file history follow the same pattern. Applicant for the '065 patent faced a final rejection in view of Takayama's electronic ticketing disclosures. *See* Op. Br. at 12–13. In its March 30, 2015 Appeal Brief—exactly as it had done in its March 2014 Appeal Brief for the '720 patent—applicant distinguished the Takayama reference on the grounds that it required physical possession of an electronic ticket:

> In the system of the Takayama patent, the user takes physical possession of the electronic instrument, by storing it in his or her electronic wallet. . .

> In contrast, in the claimed system, no activity is required by either party, beyond the initial purchase of the ticket by a patron. When that purchase is made, the notification system automatically sends a message, or otherwise provides notification, to the individual for whom that ticket was purchased. Thereafter, the individual can utilize that ticket merely by showing up at the venue for the event to which the ticket pertains, and presenting identification to the entry system. Upon confirming that an electronic ticket has been purchased for that individual, he or she is granted access to the venue. ***Since there is no requirement for physical possession of the electronic ticket***, there is no need to effect any type of transfer from one person to another. Rather, the electronic ticket, and information associating the designated individual with that ticket, at all times can remain in the storage system, with which the entry system communicates.

Defendants' Ex. 28 (March 30, 2015 '065 patent Appeal Brief) at 16–17.

Plaintiff is estopped from reclaiming scope surrendered during prosecution. Moreover, even if the presentation of an electronic ticket were within the scope of plain and ordinary meaning (which it is not), applicant's clear and unequivocal disclaimer "overcomes the presumption." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1097 (Fed. Cir. 2013) ("prosecution

history disclaimer overcomes the presumption of plain and ordinary meaning."); *Omega Eng'g, Inc*, 334 F.3d at 1324–25 ("[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender.").

    **B.**      **Term No. 1: "token representing the electronic ticket"**

    Plaintiff's two-paragraph rebuttal in support of "plain and ordinary meaning" consists mostly of repeating the claim language and citing to a conclusory expert declaration, which attempts to link "token" as used in the networking context with the Asserted Patents. *See* Resp. at 15–16. It never, however, cites to the intrinsic record and generally agrees with Defendants that no technical or non-technical dictionary defines "token" as used in the Asserted Patents' claims. *See* Resp. at 16. Plaintiff also advances a construction for the term it insists is definite and requires no construction, albeit without any citation to the intrinsic record. *See id*. at 15–16 ("[T]he token is a data structure stored in the system database for uniquely identifying the ownership rights of an electronic ticket by virtue of the token's association with identifying information about a particular patron stored on the database."). These omissions and contradictions tacitly support Defendants' position that nothing in the intrinsic or extrinsic record provides support for the "token" term.

    At its core, Plaintiff's only argument is that the term is definite because Defendant's extrinsic dictionary definitions "are consistent with the usage of the term . . . within the context of the '720 patent claimed inventions." *Id*.; *but see IQASR LLC*, 825 F. App'x at 903 ("The district court could reasonably discount the importance of the more extensive use of the term "fuzz" prior to the invention date or the isolated use of the term "magnetic fuzz" in related, but different recycling contexts."). But Plaintiff does not explain how the usage is consistent in a way that would provide reasonable certainty to the term. It relies solely on its expert's one-sentence opinion that,

like the claim term, "a token ring network identifies rights among various taken ring nodes." Resp. at 16 (quoting Malek Decl. at ¶ 24). Yet, none of the dictionary definitions its expert quotes for this interpretation associates tokens with rights, or even uses the word "rights." Plaintiff's expert's conclusory opinion should be disregarded. *See* Malek Decl. at ¶¶ 24–25; *Phillips*, 415 F.3d at 1318 ("[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court.").

### C.   Term No. 2: "electronic ticket(s)"

Plaintiff proposes that "electronic ticket" is definite because it refers to "an electronic record of ticket rights." Resp. at 18. As an initial matter, "electronic record" is unsupported because the Asserted Patents never use the phrase. *Lone Star Tech. Innovations, LLC v. Asustek Computer Inc.*, No. 6:19-CV-00059, 2020 WL 6811484, at *11 (E.D. Tex. July 31, 2020) ("[T]he intrinsic record never uses the term 'image data,' [so the] inclusion of the word 'image' is inappropriate.").

The problem with Plaintiff's position is that nothing in the Asserted Patents provides any certainty as to the metes and bounds of the term. This is illustrated by Plaintiff's Infringement Contentions, which ***simultaneously*** assert that an electronic ticket is (1) information exclusively associated with an event and also (2) any information associated with either the event or the ticket holder. Ex. 4 at 5–6 (merging "electronic ticket" and "customer account" into "electronic ticket information"). Ultimately, Plaintiff's Response does not dispute that the term "electronic ticket": (1) has no accepted or generally-used meaning in the art; (2) has no non-functional definition in the specification or prosecution history; (3) features in no patent figures; (4) is not defined in any extrinsic dictionary. Resp. at 16–18.

### D.   Term No. 4: "a trading system . . ."

Plaintiff's Response is effectively that the trading system trades. This is not structure, but function—illustrating why 35 USC 112, ¶6 applies. Plaintiff also confirms that the only

"algorithm" it can identify is the term's function of trading. *See* Resp. at 20. But this is not a series of steps, which would achieve the trading function. Given that "trading" is not an algorithm, the term is indefinite. Moreover, Plaintiff does not dispute that the word "system" is a nonce word that often implicates 35 USC 112, ¶6. Nor does Plaintiff dispute that there was no known trading system inherently capable of performing the claimed function and that the trading system recites a specialized function. Plaintiff also appears to agree that specification's disclosure is merely a recitation of the term's function.

Instead, Plaintiff argues that the overall term recites structure because various components connote structure. Resp. at 19–20. No law is cited for this approach. More importantly, none of the six components are structure for the trading system. They are separate components that, by Plaintiff's own words, the trading system "implements." *Id*. The fact that the trading system "implements" or interacts with other separate components, such as the database and payment system, to trade an "electronic ticket . . . represented by the token. . ." is just a description of the function and a claimed point of novelty. *See Halliburton v. Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008) ("a vice of functional claiming occurs when the inventor is painstaking when he recites what has already been seen, and then uses conveniently functional language at the exact point of novelty"). None of this connotes structure.

Plaintiff then turns to the specification to again explain how the trading system "interacts" with other components. *Id*. at 20–21. Plaintiff cites the high-level block diagram of Figure 2 that generally recites "trading." *Id*. at 21. A black-box disclosure of "trading," however, is not structure foreclosing the application of 35 USC 112, ¶6. Plaintiff also argues that Figure 6 discloses an algorithm for implementing the trading system. *Id*. Yet, Figure 6 and related disclosure at 18:32–

42 explain that the invention involves the step of "execute transaction & move token." There is absolutely no disclosure explaining how this could be achieved.

> ### E.        Term No. 5: "an entry system . . ."

As with the "trading system" term, the Court should find that 35 USC 112, ¶6 applies and hold the "entry system" term indefinite for lack of a corresponding algorithm.

Plaintiff's Response fails to bridge the gap. It identifies the "access control device with a reader" but other than repeating the claim language, Plaintiff does not show where the patents explain the mechanisms by which the entry device achieves its claimed functions, such as confirming that the patron is associated with an electronic ticket and automatically providing physical access. Resp. at 23. Plaintiff also does not demonstrate that "access control device with a reader" is any better than a purely functional term like "system." Op. Br. at 18. The remaining claim language that Plaintiff lists refers to other components (the "identifying information," "database," and "token") that the "entry system" interacts with and are not structure for the entry system itself. *See* Resp. at 23.

The Court should also reject Plaintiff's conclusory legalese that it is "clear" from the specification that the "entry system" term "corresponds to a discrete component of the claimed network architecture" as well as Plaintiff's unexplained specification cites and block quotes. Resp. at 23–24. Figure 4 and 6:56–7:17 merely disclose a high-level block diagram that reflect the vague language of the claim ("access-control device . . . is equipped with a reader") and the term's function ("approval is given to permit entry"). Figure 7 only states that the method includes an "Authorize Entry" step. The related specification section that Plaintiff quotes similarly just recites the function of allowing venue access. Resp. at 24–25. None of this disclosure provides adequate structure or an algorithm.

10

Dated:  December 7, 2021           Respectfully submitted,

**FISH & RICHARDSON P.C.**


*/s/ Michael R. Ellis*
Neil J. McNabnay
njm@fr.com
Texas Bar No. 24002583
David B. Conrad
conrad@fr.com
Texas Bar No. 24049042
Ricardo J. Bonilla
rbonilla@fr.com
Texas Bar No. 24082704
Michael R. Ellis
ellis@fr.com
Texas Bar No. 24102726

FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

***Attorneys for Defendants
Ticketmaster L.L.C. and
Live Nation Worldwide, Inc.***


## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2021, the foregoing document is being served on all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Michael R. Ellis*
Michael R. Ellis

11