**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **GLOBAL ETICKET EXCHANGE LTD.,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **TICKETMASTER L.L.C., AND** ) <br> **LIVE NATION WORLDWIDE, INC.,** ) <br> ) <br> Defendants. ) <br> ) | **Case No. 6:21-cv-00399-ADA** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OF PATENT INVALIDITY UNDER 35 U.S.C. § 101**

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  LEGAL STANDARD .................................................................................................... 1

III. ARGUMENT .................................................................................................................. 2

   A.  *The Asserted Claims Are Not Invalid Under §101* ........................................... 2

       1. The Asserted Claims Are Directed To Specific Improvements In Electronic Ticket Network System Architecture ........................................... 2

       2. Neither The *Bytemark* Case Nor The *Smart Systems Innovations* Case Cited By Defendants Are Analogous To The Claimed Inventions of The Asserted Patents ................................................................... 4

       3. Pertinent Analogous Cases Demonstrate That The Asserted Patents Cover Patent Eligible Inventions ................................................................... 6

       4. Defendants Acknowledge That Their Later Filed Analogous Patents Are Directed to Patent Eligible Technology ................................................. 9

       5. The USPTO's Finding Regarding The §101 Rejection For U.S. Patent Application No. 15/392,279 Is Irrelevant ......................................... 10

   B.  *The Claimed Inventions Of The Asserted Patents Contain An Inventive Step* ..... 12

       1. The Claimed Inventions Of The Asserted Patents Recite a Technology-Based Solution To A Technological Problem ............................................. 12

   C.  *The Claimed Inventions Of the Asserted Patents Do Not Preempt The Trading Of Electronic Event Tickets* ................................................................. 14

IV.  CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) ............... 12

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016) ............... 14, 15, 16

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341
  (Fed. Cir. 2016) ................................................................................................. 8, 9, 13, 16

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) ............................................................. 12

*Bytemark, Inc. v. Masabi Ltd.*, Case No. 2:16-cv-00543-JRG-RSP, 2018 WL 7272023
  (E.D. Tex. Nov. 26, 2018) ................................................................................. 5, 6, 15

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) ................................................ 12

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091 (Fed. Cir. 2021) ................... 5

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) ............................. 13, 16

*Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018) ............................................. 8

*Linksmart Wireless Tech., LLC v. Caesars Entm't Corp.*, No. 2:18-cv-00862-MMD-NJK,
  2019 WL 7116101 (D. Nev. Dec. 23, 2019) .................................................................... 10

*Mayo Collaborative Servs. v. Prometheus Labs.*, Inc., 566 U.S. 66 (2012) ................................ 13

*Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313 (Fed. Cir. 2005) .......................................... 11

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364 (Fed. Cir. 2017) ............... 7, 15

*SRI Int'l, Inc. v. Cisco Sys. Inc.*, 930 F.3d 1295 (Fed. Cir. 2019), ................................................. 7

*Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890 (Fed. Cir. 2019) ............................................. 8

**Statutes**

35 U.S.C. § 101 ............................................................................................................. *passim*

35 U.S.C. § 282 ...................................................................................................................... 1

**I.      INTRODUCTION**

Plaintiff Global eTicket Exchange Ltd. ("GEE") submits this memorandum in opposition to Defendants' Motion For Summary Judgment Of Invalidity Pursuant To 35 U.S.C. § 101 (Dkt. No. 79).

**II.     LEGAL STANDARD**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

An issued patent is presumed valid. 35 U.S.C. § 282. This "statutory presumption of validity" applies when a party challenges a patent under 35 U.S.C. § 101. *CLS Bank Intern. v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1284 (Fed. Cir. 2013). "[T]he burden is on the party challenging the validity of a patent to show that it is invalid by clear and convincing evidence." *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002); *see Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001). Consequently, "a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." *Eli Lilly Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001). When facts associated with a patent invalidity are not in dispute, the court determines "whether summary judgment of invalidity is correct by applying the law to the undisputed facts." *Myspace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1257 (Fed. Cir. 2012) (citing *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1366 (Fed. Cir. 2011)).

## III.   ARGUMENT

### A.   The Asserted Claims Are Not Invalid Under §101

#### 1. The Asserted Claims Are Directed To Specific Improvements In Electronic Ticket Network System Architecture

Whether the claims of a patent are directed to patentable subject matter under § 101 is a two-step inquiry. *See Alice Corp. Pty. Ltd. v, CLS Bank Int'l*, 134 S.Ct. 2347, 2355 (2014). First, a court must "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id*. The first step under Alice "is a meaningful one" that "cannot simply ask whether the claims involve a patent-ineligible concept." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Instead, step one requires examination of "the 'focus' of the claim, i.e., its 'character as a whole,'" to determine whether the claim is directed to an abstract idea. *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). At the same time, "courts 'must be careful to avoid oversimplifying the claims' by…failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *see also Enfish*, 822 F.3d at 1337 (warning against "describing the claims at such a high level of abstraction…untethered from the language of the claims").

##### a)   Defendants Improperly Characterize The Claimed Inventions

Defendants' characterization ("selling, exchanging, and redeeming tickets using computers") radically oversimplifies the claimed inventions. It ignores all of the claim language, including the specifically-claimed integrated network system architecture and protocols that define the inventions. When properly "account[ing] for the specific requirements of the claims," *McRO*, 837 F.3d at 1313, the Asserted Claims are not "directed to" Defendants' purported abstract idea, but instead to a particular implementation: A specific arrangement of integrated network system components and protocols to accomplish the identified functionality.

2

More specifically, Defendants' oversimplified characterization ignores that the claimed systems and methods implement a specific integrated network system architecture. It also ignores the requirements of the claimed protocols defining the operation and functionality of the different components of the integrated network system architecture. It also ignores the role of the "token" stored on the database for establishing the electronic ticket ownership rights in connection with the purchase of an electronic ticket via the claimed "patron interface," the transfer of the electronic ticket via the claimed "trading system," and the verification of the electronic ticket via the claimed "entry system." Together, these limitations establish that the Asserted Claims recite a specific arrangement of components and a very specific implementation of protocols.

Further, the Asserted Claims are not directed to a computer-implemented "method of organizing human behavior." To the contrary, there is no human behavior analog to the claimed inventions. Instead, the Asserted Claims are directed to a specific integrated network system architecture, implementation, and protocol that has "layers of complexity" and "improve[s] an existing [electronic ticket] technological process." *See Enfish*, 822 F.3d at 1335.

Defendants' superficial argument that the Asserted Claims simply use functional, result-based language is meritless. Defendants merely point to each individual component of the claimed network system and again ignore all of the claim language specifying the integrated nature of the network system and protocols. Defendants' "black box" argument is equally meritless. In both of these arguments, Defendants altogether avoid any mention of the core "token" technology which establishes the integrated nature of the claimed invention. The "token" is a data structure stored on the databases which represents an electronic ticket purchased via the patron interface. The "token" is further associated with identifying information about the patron who purchased the electronic ticket via the patron interface. The "token" association with the patron identifying

3

information establishes the ownership right to the electronic ticket. The "token" stored on the database is also implemented in the trading system component of the network system. When an electronic ticket is transferred from one patron to another patron via the trading system, the association of the token is transferred to the identifying information about the patron to whom the electronic ticket was transferred to establish the change in ownership rights to the electronic ticket.

The patron interface and trading system are also integrated with the payment system. When a patron purchases an electronic ticket via the patron interface, the payment system "debits the account of the first patron for the purchase of the electronic ticket." Similarly, when a patron sells an electronic ticket to another patron via the trading system, the payment system "credits the account" of the patron who is selling the electronic ticket and "debits the account" of the patron who is purchasing the electronic ticket.

The "token" stored on the database is also integrated into the "entry system" for verifying the authentic ownership rights to an electronic ticket for permitting entry to an event venue. The specific integrated network system architecture and protocols of the claimed inventions provide enhanced security, fraud prevention and system integrity technical benefits.

    **2.    Neither The *Bytemark* Case Nor The *Smart Systems Innovations* Case Cited By Defendants Are Analogous To The Claimed Inventions of The Asserted Patents**

Defendants' attempt to analogize the claimed inventions to other cases entirely misses the mark. "While prior cases can be helpful in analyzing [§101] eligibility," the analysis "must be decided on a case-by-case basis in light of the particular claim limitations, patent specification, and the invention at issue." *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1099 (Fed. Cir. 2021). Both cases cited in Defendants' Motion are inapposite and clearly distinguishable.

The patent claims in the *Bytemark* case were directed to the presentation of a fanciful image instead of a barcode for gaining entry to an event venue. *See Bytemark, Inc. v. Masabi Ltd.*, Case No. 2:16-cv-00543-JRG-RSP, 2018 WL 7272023 (E.D. Tex. Nov. 26, 2018). The purported benefit of the use of the fanciful image was to expedite the entry process. Provided below is an exemplary fanciful image disclosed in the Bytemark patent.



*Id. *4*; Exhibit 1 (U.S. Patent No. 8,494,967, Fig. 5). Unlike the claimed inventions in the Asserted Patents which are directed to electronic ticket integrated network system architecture and protocols, the patent in the *Bytemark* case was directed to a rather trivial feature of an electronic entry system – the display of a fanciful image (instead of a barcode) on a device. The trivial nature of the Bytemark patent is not surprising, since it was based on an application filed in 2012 – 12 years after Plaintiff filed a patent application for its core electronic ticket system technology.

Defendants' claim that the Bytemark patent and the Asserted Patent cover analogous inventions is unavailing. Defendants merely point out that the Bytemark patent references a "token associated with a previously purchased electronic ticket" and "validation of the token." However, the "token" disclosed in the Bytemark patent bears no resemblance to the "token" technology of the claimed inventions of the Asserted Patents. The Bytemark patent only disclosed the exchange

of a token between the customer and a database to verify the download of the fanciful image to the customer's device.

If it is possible, the patents in the *Smart Sys. Innovations* case are even further removed from the claimed inventions of the Asserted Patents.  The patents in the *Smart Sys. Innovations* case were directed to the use of a bankcard for payment of mass transit system fares.  *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1368 (Fed. Cir. 2017).  Defendants attempt to draw a tenuous connection between the Asserted Patents and the patents in the *Smart Sys. Innovations* case because they both purportedly involve a payment system for financial transactions.  However, the claimed inventions of the Asserted Patents are directed to an integrated network system that implements a payment system, not an isolated payment system.  Defendants' focus on the payment system ignores the rest of the claim language, and impermissibly characterizes the claims at such a high level as to cause the exceptions to § 101 swallow the rule.  *Enfish,* 882 F.3d at 1337.  Accordingly, like the patent in the *Bytemark* case, the patents in the *Smart Sys. Innovations* case are not remotely analogous to the claimed inventions of the Asserted Patents.

### 3. Pertinent Analogous Cases Demonstrate That The Asserted Patents Cover Patent Eligible Inventions

The claimed inventions of the Asserted Patents are similar to other network architecture patent claims found to be directed to patent eligible technological improvements.  In *SRI Int'l, Inc. v. Cisco Sys. Inc.*, 930 F.3d 1295 (Fed. Cir. 2019), claimed methods for improving security of a communication network were found to be patent-eligible subject matter under 35 U.S.C § 101.  The Federal Circuit found that "the representative claim improves the technical functioning of the computer and computer networks by reciting **a specific technique for improving computer network security**." *Id*. at 1303–04 (emphasis added).  The Court held that the patents at issue

were not directed to an abstract idea under Alice step 1 and, therefore, were patent-eligible under 35 U.S.C. §101.  Like the patent claim in *SRI Int'l*, the patent claims of the Asserted Patents recite a particular network architecture having a "specific technique" to provide the technological improvement of enhanced network security.  For example, the '720 Patent claims recite a particular integrated network system architecture which implements a specific technique using a "token" associated with "identifying information" about a patron to provide enhanced network security, fraud prevention and improved system integrity with regard to the purchase, resale and event venue entry verification of electronic ticket rights.

*Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) also supports a finding that the '720 patent claims are not directed to an abstract idea.  In *Finjan*, the court held that the claims were not directed to an abstract idea because "the claims recite more than a mere result." *Id.*  More specifically, the court determined that the claims "recite specific steps - generating a security profile that identifies suspicious code and linking it to a downloadable - that accomplish the desired result." *Id.* The '720 patent claims are similarly directed to a particular network architecture which implements specific functionality, including the use of a token associated with identifying information about a patron, to provide enhanced security, fraud prevention and improved system integrity.  *See also Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 897 (Fed. Cir. 2019).  (The claims were not to an abstract idea because they focused on "a particular improvement in how this is done - i.e., by use of a file packet to enable the further functionality of initiating on-demand registration of the application.")

The Federal Circuit's decision in *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) further demonstrates that the Asserted Patents are directed to patent eligible inventions.  Both the *BASCOM* patent claims and the Asserted Patent

7

Claims cover network systems. The *BASCOM* patent claims recited an Internet filtering system that implements individually customized filtering on a remote ISP server, which provided an improvement over prior art filtering systems implemented locally on individual computers or a dedicated server. Similarly, the Asserted Claims recite a network architecture having a token associated with an individual's unique identifying information, stored on a network database to provide technological improvement (enhanced security, fraud prevention) over prior art electronic ticket systems.

In *BASCOM*, the Federal Circuit determined that claims reciting network and Internet components were patent eligible because they described "the installation of a filtering tool at a specific location, remote from the end-users, with customizable features specific to each end user." *BASCOM*, 827 F.3d at 1350. As discussed above, the claimed inventions of the Asserted Patents recite specific limitations directed to a particular network architecture having a configuration and protocol which require (1) a database which stores identifying information for each patron; (2) a token stored on the database wherein the token (a) represents each electronic ticket purchased via the network system patron interface and (b) is associated with identifying information about the patron who purchased the electronic ticket rights to establish authentic ownership rights to the electronic tickets; (3) a trading system which transfer the associate of the token to identifying information about each patron to whom electronic ticket is transferred; (4) a payment system to anonymously effectuate primary and secondary market electronic ticket transactions by and between patrons; and (5) an access control system configured to verify authentic and valid electronic ticket rights based on the identifying information pertaining to an entering patron presented at the event venue. Accordingly, like *BASCOM*, the claims of the Asserted Patents recite

network system components in a purposeful integrated arrangement which implement specific protocols to provide technical benefits.

*Linksmart Wireless Tech., LLC v. Caesars Entm't Corp.*, No. 2:18-cv-00862-MMD-NJK, 2019 WL 7116101 (D. Nev. Dec. 23, 2019) provides further support for finding the claimed inventions of the Asserted Patents patent eligible under §101. The patent in *Linksmart* was directed to the use of a "redirection server" in a network system to improve computer networking technology. *Id*. at *2-3. More specifically, the court determined that the use of the "redirection server" created a unique computer network configuration which implemented a specific protocol that modifies rules over time to control data. *Id*. at *12-14. As in *Linksmart*, the claimed inventions of the Asserted Patents are directed to a unique integrated network system configuration having a specific protocol for establishing and verifying the authentic ownership rights of an electronic ticket.

### 4. Defendants Acknowledge That Their Later Filed Analogous Patents Are Directed to Patent Eligible Technology

Defendants' litigation-induced allegation that the Asserted Patents are not directed to patent eligible technology is belied by the testimony of an inventor for Defendants' own later-filed patents directed to analogous inventions. Mr. David Scarborough, an inventor of several of Defendants' patents directed to analogous electronic ticketing systems, unequivocally confirmed that his inventions were directed to "technology." For example, with regard to the invention covered by U.S. Patent 9,251,518, Mr. Scarborough testified:

Q. 

9



Exhibit 2 (Scarborough Dep. Tr. at 50:10 – 51:2). Significantly, the USPTO Examiner cited the U.S. Patent Publication of the application which issued as Plaintiff's '720 patent as a §102(b) prior art reference to reject the '518 patent application claims. Exhibit 3 (USPTO's Jan. 13, 2015 Rejection of Ticketmaster's U.S. Patent Application No. 14/202,218). Accordingly, Defendants' later filed '518 patent is clearly analogous to the claimed inventions of the Asserted Patents.

 5. **The USPTO's Finding Regarding The §101 Rejection For U.S. Patent Application No. 15/392,279 Is Irrelevant**

Defendants' reliance on the proceedings during the examination of U.S. Patent Application No. 15/392,279 (Dkt. No. 79-4) ("the '279 application") is misplaced. *See* Dkt. No. 79-10 ('279 application file history). Significantly, this Court is not bound by a decision by the U.S. Patent and Trademark Office ("USPTO"). *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1322 (Fed. Cir. 2005) ("Furthermore, a court is not bound by the PTO's actions and must make its own independent determination of patent validity.") (*citing Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956 (Fed. Cir. 1997)). As set forth below, there are several reasons why this Court should make an independent determination of the claimed inventions of the Asserted Patents.

First, the USPTO decision regarding § 101 was flawed because it was premised on an oversimplification of the claims. *See McRO*, 837 F.3d at 1313 ("courts 'must be careful to avoid oversimplifying the claims' by…failing to account for the specific requirements of the claims."); *see also Enfish*, 822 F.3d at 1337 (warning against "describing the claims at such a high level of abstraction…untethered from the language of the claims"). Specifically, the USPTO erroneously

10

characterized the claimed invention as "controlling access to a venue, and achieving such control in coordination with an electronic ticket exchange." Dkt. No. 79-10 (PTAB Decision at p. 7).

Further, the USPTO decision was limited to disclosure contained within the '279 application. Here, the Court can perform a more thorough analysis based on extrinsic evidence in assessing whether patent claims satisfy the requirement for patent eligibility under § 101. *See Berkheimer* v. *HP Inc.*, 881 F.3d 1360, 1364, 1368-69 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018); *Cellspin Soft, Inc*. v. *Fitbit, Inc.*, 927 F.3d 1306, 1317-18 (Fed. Cir. 2019) (Plausible and specific factual allegations not expressly stated in the specification may be sufficient to establish that claimed structure is unconventional and inventive.).

In addition, the subject matter of the pending claims in the '279 application did not cover the same integrated network system architecture and protocols recited in the Asserted Patent claims. For example, the '279 application claims did not include an integrated patron interface for the purchase of primary market electronic tickets from a vendor, no a token representing an electronic ticket purchased by a patron via a patron interface from a vendor,n or a token associated with the identifying information about a patron who purchased a primary market electronic ticket from a vendor. In addition, the '279 patent application claims did not include an integrated payment system configured to automatically debit a patron's account in connection with the purchase of an electronic ticket via a patron interface from a vendor or automatically debit/credit patron accounts in connection with the transfer of an electronic ticket.

Moreover, the USPTO did not take into consider the core "token" technology implemented by the claimed electronic ticketing integrated network system and protocol. Instead, the USPTO erroneously limited its analysis to each component of the integrated network system in isolation.

Accordingly, the USPTO improperly reduced the claimed invention to a "database," "reader" and "access control device."  Dkt. No. 79-10 (PTAB Decision at p. 11).

### B. The Claimed Inventions Of The Asserted Patents Contain An Inventive Step

*Alice* Step 1 is dispositive, so the Court need not reach *Alice* Step 2.  Nevertheless, the claimed inventions of the Asserted Patents contain sufficient "inventive concept."  *Alice*, 134 S.Ct. at 2355 (*citing Mayo Collaborative Servs. v. Prometheus Labs*., Inc., 566 U.S. 66, 73 (2012)).  This inquiry "requires more than recognizing that each claim element, by itself, was known in the art." *BASCOM*, 827 F.3d at 1350. Rather, the court must "consider the elements of each claim—both individually and as an ordered combination—to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014) (*citing Alice*, 134 S.Ct. at 2355).  "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM*, 1350; *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016) (claims are patent eligible "when the claims solve a technology-based problem, even with conventional, generic components, combined in an unconventional manner").

#### 1. The Claimed Inventions Of The Asserted Patents Recite a Technology-Based Solution To A Technological Problem

As discussed above, the claimed inventions of the Asserted Patents are directed to specific technological problems in then-existing electronic ticketing systems: security, fraud and system integrity vulnerabilities.  The claimed inventions of the Asserted Patents solve these problems by reciting an integrated electronic ticket exchange and event venue access control system.  The claimed integrated system implements a patron interface for sale of electronic tickets, a database containing registered customer information and a token for tracking the authentic ownership rights

of electronic ticket purchased or exchanged on the integrated system, an electronic ticket trading system integrated with electronic tickets purchased via the patron interface and the database and token stored thereon, a payment system and an entry system. The integrated system securely stores the electronic ticket ownership rights on the database and maintains control over the purchase, transfer and verification of the electronic ticket rights which enhances security, prevents fraud and improves system integrity.

Defendants' reference to inventor testimony solicited in the abstract, without any context or reference to the technology of the claimed invention of the Asserted Patents, is irrelevant to a proper § 101 analysis. Nonetheless, the cited inventor testimony did recognize the significance of the integrated nature of the claimed invention system architecture and protocols.

Similarly, Defendants' reference to GEE's internal Position Paper is irrelevant. It merely contemplated how GEE would address issues raised by potential investors in the wake of the burst of the dot-com bubble. Contrary to the inference Defendants attempt to draw from this marketing material, GEE was impressing on the potential investors that it had substantive technology – not over-hyped technology such as the "next killer application," the "next super chip," or the "next billion line fuzzy logic code." Dkt. No. 79-9 (GEE Position Paper at p. 132).

Defendants' attempt to characterize the "token" element recited in the claims of the Asserted Patents as generic or abstract has the opposite effect. None of the references to "token" in the cases cited by Defendants pertains to the "token" element of the Asserted Patents. Namely, a data structure stored on a database and associated with identifying information about the patron having authentic ownership rights to an electronic ticket. For example, the "token" in *Bytemark* related to an item that was transmitted from a ticket owner's mobile device to a database for purpose of initiating the download of a fanciful image to the mobile device. 2018 WL 7272023,

13

*4. Similarly, the "token" in *Smart Sys. Innovations*, was merely the equivalent of a coin for a mechanical transit system. 873 F.3d at 1374. As discussed above, the patents disclosed in *Bytemark* and *Smart Sys. Innovations* are not remotely analogous to the claimed inventions of the Asserted Patents. Accordingly, Defendants unintentionally demonstrated the unique nature of the claimed "token" element.

### C. The Claimed Inventions Of the Asserted Patents Do Not Preempt The Trading Of Electronic Event Tickets

The claimed inventions of the Asserted Patents do not raise preemption concerns. As discussed above, the Asserted Patents are directed a particular network system architecture and specific protocols. Accordingly, the Asserted Patents are "not so broadly described to cause preemption concerns." *Amdocs*, 841 F.3d at 1302; *see also McRO*, 837 F.3d at 1314 ("The preemption concern arises when the claims are not directed to a specific invention and instead improperly monopolize 'the basic tools of scientific and technological work.'"). Instead, the Asserted Claims "recite a specific, discrete implementation," *see BASCOM*, 827 F.3d at 1350, and are "narrowly circumscribed to the particular system outlined." *See Amdocs*, 841 F.3d at 1302; *see also McRO*, 837 F.3d at 1314 (citing *Enfish*, 822 F.3d at 1336) (finding that courts should "look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery").

For example, the claims recite a specific protocol that uses the association of "identifying information" about the patron with a token for establishing and verifying the ownership rights of an electronic ticket. This and other "'additional features' . . . ensure that the claims are 'more than a drafting effort designed to monopolize [an abstract idea].'" *DDR Holdings*, 773 F.3d at 1259 (citing *Alice*, 134 S. Ct. at 2357); *see also McRO*, 837 F.3d at 1316 ("By incorporating the specific

14

features of the rules as claim limitations, claim 1 . . . does not preempt approaches that use rules of a different structure or different techniques.").

### IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' motion.

Dated: February 17, 2023

Respectfully submitted,

/s/ *Robert K. Goethals*
Robert K. Goethals (*pro hac vice*)
David Leichtman (*pro hac vice*)
LEICHTMAN LAW PLLC
185 Madison Avenue, 15th Floor
New York, NY 10016
Phone: (212) 419-5210
rgoethals@leichtmnlaw.com
dleichtman@leiichtmanlaw.com


Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinklaw.com
THE MORT LAW FIRM, PLLC
100 Congress Avenue, Suite 2000
Austin, Texas 78701
Tel/Fax  512-865-7950

***Attorneys for Plaintiff Global eTicket Exchange Ltd***.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 17, 2023, *Plaintiff's Opposition To Defendants' Motion For Summary Judgment Of Patent Invalidity Under 35 U.S.C. 101* was filed electronically in compliance with Local Rule CV-5(a) and was served via electronic pursuant to Local Rule CV-5.2(e) on all counsel of record.

_____